UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Tallahassee Division

| | | |
|---|---|---|
| TRACY COPELAND,<br>AMADO PARRA, and<br>ARCHIE GREEN,<br>individually and on behalf<br>of a Class of persons<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JULIE L. JONES, in her<br>official capacity as Secretary of the<br>Florida Department Corrections; and<br>CORIZON, LLC, an out of state<br>corporation registered and doing business<br>in Florida,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:15-cv-00452-RH-CAS |

## CONSENT ORDER

THIS CAUSE came to be heard upon the Joint Motion to Certify Class, Preliminarily Approve Class Settlement, Provide Notice to Class, and Schedule Fairness Hearing (DE 72, the "Joint Motion"). Plaintiffs are Tracy Copeland, Archie Green, and Amado Parra, individually and on behalf of a class of similarly situated persons. Defendants are Julie L. Jones, in her official capacity as Secretary of the Florida Department of Corrections (FDOC), and Corizon, LLC (Corizon). The Parties have requested that the Court enter this Consent Order. Being advised that the parties have agreed to the entry of this Order, and after reviewing the file and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      **Background**.  Plaintiffs initiated this action by filing a Complaint on September 16, 2015 (DE 1).  In the Complaint, Plaintiffs allege that Defendants have violated, and continue to violate, the Eighth Amendment by having a policy, practice, and custom of not providing hernia surgeries to FDOC prisoners.  Plaintiffs filed a Motion for Class Certification (DE 25) and a Motion for Preliminary Injunction (DE 27).  Defendants denied, and continue to deny, all allegations in the Complaint and pending Motions and maintain that Plaintiffs are not entitled to any relief whatsoever.  Corizon also contends that it provided medical services in compliance with FDOC's policies and procedures as required by Contract #C2757 (as amended).  On May 2, 2016, the Parties engaged in mediation to see if they could come to an amicable, mutually agreeable resolution of this action.  To avoid costly and protracted litigation and to settle the disputes in this action fully and finally, the Parties have voluntarily agreed, subject to the terms and conditions of this Consent Order, to resolve all claims and issues in this action by entering into and consenting to the Court's adoption of this Consent Order.  The Parties agree that the representations made in this Consent Order are true and agree, subject to the terms and conditions of this Consent Order, to be bound by it.

2.      **No Admission of Liability.**  Defendants maintain and continue to maintain that they have consistently acted in accordance with applicable law and continue to vigorously deny all allegations contained in the Complaint.  Neither this Consent Order, nor any of its terms or provisions, nor the Final Approval,[1] shall constitute an admission by Defendants of any liability or wrongdoing whatsoever, nor is this Consent Order or the Final Approval a finding of the validity of any claim asserted or relief sought in this action or of any wrongdoing by Defendants.  Neither

---

[1] "Final Approval" refers to this Court's final approval after a fairness hearing, as required by Rule 23(e) of the Federal Rules of Civil Procedure.

this Consent Order nor the Final Approval shall be used or construed as an admission, concession, or presumption or inference of any fault, liability, or wrongdoing by any person, business entity, or governmental entity, including Defendants.  Neither the Final Approval, this Consent Order, the fact of settlement and the settlement proceedings, nor the settlement negotiations, nor any related statement or document, shall be offered or received in evidence as an admission, concession, or presumption or inference against Defendants in this action or any other legal proceeding, except in any subsequent proceeding to enforce this Consent Order in this action after the Court enters Final Approval, or in any subsequent action by or against a Damages Class Member, and each of them, to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense.  This preceding sentence does not preclude a party from enforcing the ministerial duties imposed by the Consent Order before Final Approval.  In addition, nothing about this Consent Order shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in this action or any other action for adversarial, rather than settlement, purposes.  Plaintiffs hereby agree that if, for any reason, Final Approval is not obtained, the certification of a settlement class will have no force or effect and will be immediately revoked.

3.     **Class Certification**.  Consistent with the stipulations of the Parties for purposes of settlement only, the Court finds that the requirements of Federal Rule of Civil Procedure 23 are met, and hereby certifies this as a class action.

a.     *Class Definitions*.  The Court certifies an *Injunctive Class* under Rule 23(b)(2), defined as all current and future prisoners in FDOC custody who, after September 16, 2011, have been diagnosed, or will be diagnosed, with a hernia by a qualified medical provider; and a *Damages Class* under Rule 23(b)(3), defined as all past and current

prisoners in FDOC custody who were diagnosed with and/or treated for a hernia between September 8, 2013 and May 31, 2016 at an FDOC facility while Corizon was the medical provider for that FDOC facility.  For the Damages Class only, the Court certifies two sub-classes: a *Consult Request Sub-Class*, defined as all Damages Class Members for whom a request for a surgical consultation and/or surgical repair of a hernia was submitted (regardless of whether it was approved or denied); and a *No Consult Sub-Class*, defined as all Damages Class Members for whom a request for surgical consultation and/or surgical repair of a hernia was not submitted.  No FDOC prisoner may be a member of more than one (1) Damages Sub-Class.  The Damages Class shall not include: 1) any FDOC prisoner for whom a request for a surgical consultation and/or surgical repair was denied while at a facility where the medical care was being provided by Corrections Corporation of America, The GEO Group, Inc., Wexford Health Sources, Inc., Centurion of Florida, LLC, or any of their parents, subsidiaries or affiliates (such as CCA, Inc.); 2) any FDOC prisoner who refused a surgical consultation and/or surgical repair of a hernia; 3) any FDOC prisoner who received surgery three (3) months from the date that the prisoner was first diagnosed with a hernia at an FDOC facility[2]; 4) any FDOC prisoner for whom a surgeon recommended against surgical repair of a hernia; and 5) any FDOC prisoner who currently has, or previously brought, a civil action against Corizon alleging a failure to provide adequate medical care (including hernia-related medical care) and for whom recovery would be barred by *res judicata*, collateral estoppel, or a release signed by the FDOC

---

[2] Corizon does not admit or agree that a delay of more than three (3) months between a hernia diagnosis and surgical repair is unreasonable or demonstrates deliberate indifference to a serious medical need.  Corizon's position is that does not reflect the constitutional standard of care for inmates with hernias in the Eleventh Circuit.

prisoner.

b.      *Identification of Class Members*.   Members of the Consult Request Sub-Class, and the dates on which the relevant events occurred, will be identified through an electronic search of FDOC's records for all FDOC prisoners at a facility where Corizon was the medical provider for whom a request for surgical consultation or surgery for a hernia was submitted from September 8, 2013 through May 31, 2016.   Members of the No Consult Sub-Class, and the dates on which the relevant events occurred, will be identified through an electronic search of FDOC's records for all FDOC prisoners at a facility where Corizon was the medical provider for whom an ICD-9 or ICD-10 hernia diagnosis code was entered into FDOC's database from September 8, 2013 through May 31, 2016.   In addition, Damages Class members will be identified from the list of prisoners produced by Corizon in discovery who received hernia surgery or for whom a request for surgical consultation for a hernia was submitted, and from the list of current and former prisoners compiled by Class Counsel of prisoners who reported they had hernias to Class Counsel.   All of the prisoners on the list compiled by Class Counsel shall be members of the No Consult Sub-Class.

c.      Pursuant to the requirements and regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), specifically 45 C.F.R. § 164.512(e)(1)(ii)(B) and § 164.512(e)(1)(v), and the Court's Agreed HIPAA Qualified Protective Order (DE 47) and in order to ensure compliance with the applicable state laws and regulations in the State of Florida governing patient privacy and protecting health care information, including without limitation, Florida Statutes § 626.9651, Class Counsel will contemporaneously file *under seal* a List of all Damages Class Members, and their Sub-

Class designations.  The Court specifically finds that the List of all Damages Class Members and their Sub-Class designations includes Protected Health Information (PHI) as defined in 45 C.F.R. §§ 164.103 and 164.501 because such information relates to the past and/or present physical condition of individuals within the custody of the FDOC as well as the provision of health care to such individuals.   Accordingly, pursuant to this Court's Stipulated Confidentiality Order (DE 52), the parties shall designate and mark this list as "Confidential," take such measures to ensure this list is kept in strict confidence and shall not disclose this List to anyone outside of this litigation, including to any and all Class Members.  However, Class Counsel may confirm whether any individual is or is not on the List, and may otherwise advise Class Members of their rights and responsibilities under this Consent Order.  The Court authorizes the disclosure of this List to Settlement Services, Inc. (SSI), for the purposes of the administration of the matters set forth in this Order; however, no such disclosure shall occur unless and until SSI and any and all representatives of SSI engaged in the administration of the resolution of this matter execute an Acknowledgement of Stipulated Confidentiality Order form, as set forth in this Court's Stipulated Confidentiality Order (DE 52).  Copies of all signed Acknowledgements by SSI shall be provided to any Defendant's counsel upon request.

d.      If any person not on the List of Damages Class Members claims that s/he should be a Damages Class Member, that person may become a Damages Class Members only if Class Counsel verifies s/he qualifies as a Damages Class member.  A person not on the List of Damages Class Members who qualifies as a Damages Class member shall be added to the No Consult Sub-Class unless it can be readily determined from the FDOC's electronic records that a request for surgical consultation and/or surgical repair of a hernia

was in fact submitted. Such a person may be added to the List of all Damages Class Members only up until ten (10) days before the final fairness hearing.

      e.    *Class Representatives.* The Court hereby appoints the named Plaintiffs, Tracy Copeland, Archie Green, and Amado Parra, as class representatives for the Injunctive Class. The Court hereby appoints named Plaintiffs Tracy Copeland and Archie Green as class representatives for the Damages Class.

      f.    *Class Counsel.* Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby appoints the Florida Justice Institute, Inc. and Kozyak, Tropin, and Throckmorton, LLP, as class counsel.

      g.    *Notice to Class Members*. The Court hereby directs that notice to the class members shall be completed in the following manner.

        i.  *Notice to Injunctive Class.* For the Injunctive Class, the FDOC shall post the attached Notice of Proposed Injunctive Class Action Settlement (Ex. 1) in a conspicuous place that prisoners can readily see in every dorm and unit of every FDOC facility. For the prisoners in the infirmary, Close Management, Disciplinary Confinement, Administrative Segregation, Protective Custody, or any other type of segregation, FDOC staff will distribute copies to all such prisoners. The Warden or the Warden's designee of each FDOC facility shall sign a Certification of Notice (attached as Ex. 2), certifying compliance with this sub-paragraph 3.g.i., and shall provide a copy of each Certification to Class Counsel.

       ii.  *Notice to Damages Class.* Class Counsel engaged the services of SSI in Tallahassee, which will handle notice to the Damages Class and other

aspects of class administration.  The FDOC will provide to SSI the following information for all Damages Class Members: For the currently incarcerated Damages Class Members, the current institution and the institution's address at which each Damages Class Member is currently housed; for the non-incarcerated Damages Class Members, the last known address or address provided to the FDOC upon release, and social security number.  SSI will mail to all incarcerated Damages Class Members 1) the attached Notice of Proposed Damages Class Action Settlement – Incarcerated (Ex. 3), 2) the attached Opt-Out Statement (Ex. 5), and 3) a postage-paid return envelope. SSI will stamp "Legal Mail" on the envelopes containing these materials, and they shall be treated as Legal Mail under F.A.C. 33-210.102.  The FDOC shall provide paper and writing materials to FDOC prisoners, at no expense to the prisoner, for purposes of submitting objections or comments to the proposed settlement.  Objections or comments submitted to the Court by FDOC prisoners shall be treated as Legal Mail under F.A.C. 33-210.102(10)(a), for which the FDOC institution shall furnish postage for the prisoner.  SSI will mail to all non-incarcerated Damages Class Members 1) the attached Notice of Proposed Damages Class Action Settlement – Non-Incarcerated (Ex. 5), 2) an Opt-Out Statement, 3) a postage-paid return envelope, and 4) the attached Claim Form (Ex. 6).   Non-incarcerated Damages Class Member shall return the Claim Forms to SSI and they must be postmarked within ninety (90) days from the date SSI mails them.  SSI shall make reasonable attempts to locate non-incarcerated Damages Class

Members who do not return Claim Forms within forty-five (45) days from issuance of the Notice to Damages Class Members, using the members' Social Security Numbers and other skip tracing methods.  SSI shall re-send the Notice of Proposed Damages Class Action Settlement – Non-incarcerated, Opt-Out Statement, postage-paid return envelope, and Claim Form to those who do not return them within forty-five (45) days.  If SSI discovers a probable address for a member that is different from that provided by the FDOC, SSI shall mail the above materials to the new address SSI discovered.  If a non-incarcerated Damages Class Member does not timely return a Claim Form, he or she will not be entitled to a damages payment.

h. *Final Fairness Hearing*.  Pursuant to Federal Rule of Civil Procedure 23(e), the Court has made a preliminary determination that the proposed settlement of this matter and this Consent Order are fair, reasonable, and adequate for the class members.  A final fairness hearing will be scheduled by this Court no earlier than one hundred eighty (180) days from the entry of this Consent Order. If the Court enters Final Approval of this Consent Order (without revision) after the final fairness hearing, this Consent Order will continue in full force and effect.

i. *Right of Settlement Class Members to be Excluded*.  No Injunctive Class Member may elect to be excluded from the Injunctive Class or the injunctive relief provisions contained in paragraphs 5 and 6 of this Consent Order.  Any Damages Class Member may request exclusion from the Damages Class.  Damages Class Members who wish to be excluded from the Damages Class must submit a complete, accurate, and

properly signed Opt-Out Statement to SSI. SSI shall stamp the date received on the original of any Opt-Out Statement it receives from a Damages Class Member.  SSI shall serve copies of any Opt-Out Statement on Class Counsel and Defendants' counsel no later than five (5) business days after receipt of such Opt-Out Statement and shall file all Opt-Out Statements ten (10) days prior to the date set for the Final Approval Hearing.  Any Damages Class Member may rescind his or her Opt-Out Statement by no later than fifteen (15) days before the Final Approval Hearing.

   j.  *Termination of Settlement and this Consent Order.* This Consent Order is contingent upon obtaining Final Approval that survives a fairness hearing and appeal without any modification of its terms and conditions.  Corizon may, in its sole discretion and at its sole option, terminate this settlement and Consent Order within thirty-five (35) days after the time for filing Opt-Out Statements by Damages Class Members if the number of Damages Class Members who request to be excluded from the Damages Class exceeds three and one-half percent (3.5%) of those Damages Class Members who are sent a Notice. If Corizon provides Class Counsel notice of its intent to terminate this settlement agreement and Consent Order, then Class Counsel shall have twenty (20) business days within which to communicate with any and all persons filing an Opt-Out Statement and to secure withdrawal of that person's Opt-Out Statement or those persons' Opt-Out Statements.  If Corizon exercises this option and Class Counsel cannot get Damages Class Members filing an Opt-Out Statement to rescind or withdraw their Opt-Out Statements such that the number of Opt-Out Statements filed and not rescinded is three and one half percent (3.5%) or lower of the Damages Class Members who were sent a Notice, and/or the Court does not enter Final Approval, all of Plaintiffs' and Corizon's obligations under any settlement

agreement and/or this Consent Order as to the Damages Class settlement, except those obligations contained in paragraph 2, shall cease to be of any force and effect, and any settlement agreement, this Consent Order, and any order entered in connection with the settlement-related proceedings as to the Damages Class settlement shall be vacated, rescinded, cancelled, and annulled, and Plaintiffs and Corizon shall return to the status quo in this action as if they had not entered into a settlement agreement or this Consent Order. In addition, this Consent Order, any settlement agreement, and all negotiations, court orders and settlement-related proceedings shall be without prejudice to the rights of Plaintiffs and Corizon in this action.  Any statements, documents, and other evidentiary materials relating to this Consent Order, any settlement agreement, and all negotiations, court orders and settlement-related proceedings shall not be offered, admitted, or discoverable in this action or any other action.

      k.     *Binding Effect on Damages Class Members*.  Except for those Damages Class Members who timely submit a complete, accurate, and properly signed Opt-Out Statement and who do not subsequently rescind that Opt-Out Statement, all Damages Class Members shall be bound by the terms and conditions of this Consent Order, the Final Approval, any final judgment or other order concerning or relating to the settlement or settlement proceedings, and the release contained in paragraph 7 below and shall be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement or any provision of this Consent Order.

      l.     *Prohibition on Filing Complaints or Proceedings Pending Final Approval*. From the date the Court enters preliminary approval of this Consent Order to the Final

Effective Date,[3] any Damages Class Member, including Plaintiffs, who does not timely submit a complete, accurate, and properly signed Opt-Out Statement shall be prohibited from receiving any monetary recovery from any civil action or other legal proceeding concerning or relating to the claims asserted in this action or the legal matters released in paragraph 7 below.

  m. *Covenant Not to Sue or Participate in Any Other Action*.  Subject to the Court granting Final Approval, any Damages Class Member who does not timely submit a complete, accurate, and properly signed Opt-Out Statement shall be forever barred from filing any other civil action or legal proceeding or participating either as a named plaintiff or as an unnamed class member in any other civil action or legal proceeding in any federal or state court or administrative tribunal concerning or relating to the claims asserted in this action or the legal matters released in paragraph in paragraph 7 below.

  n. *Class Action Fairness Act*.  Pursuant to 28 U.S.C. § 1715, FDOC shall, within ten (10) days from entry of this Consent Order, provide the notices required by that statute to the Attorney General of Florida and the United States Attorney General.

  4. **Settlement Payment.**  Subject to the terms of this Consent Order, on the Final Effective Date, but no earlier than January 1, 2017, FDOC shall pay the sum of one hundred fifty thousand dollars ($150,000.00)[4] and Corizon shall pay the sum of one million nine hundred fifty

---

[3] "Final Effective Date" refers to: (1) if there is an appeal of the trial court's Final Approval in this action, including any appeal of an award of attorneys' fees or incentive payment to the named Plaintiffs, the date of final affirmance of the final judgment on an appeal, the date of dismissal of such appeal, the expiration of the time for a petition for review of such appeal by the United States Supreme Court of the final judgment, and, if review is granted, the date of final affirmance of that final judgment following review pursuant to that grant; or (2) if there is no appeal, then sixty-one (61) calendar days after entry of trial court's Final Approval in this actions.

[4] FDOC's payment of one hundred fifty thousand dollars ($150,000.00) is solely and exclusively for a portion of the attorneys' fees and expenses contained in paragraph 4.c. below.

thousand dollars ($1,950,000.00), for a total sum of two million one hundred thousand dollars ($2,100,000.00), to an non-interest-bearing trust account designated by Class Counsel, to be distributed as follows:

      a.    *Class Representative Fee.*  As a class representative fee, five thousand dollars ($5,000.00) will be paid to Tracy Copeland, five thousand dollars ($5,000.00) will be paid to Archie Green, and five thousand dollars ($5,000.00) will be paid to Amado Parra.  The class representative fee is in addition to any damages amounts the class representatives may receive as class members.

      b.    *Damages for Class Members*.  One million seven hundred thousand dollars ($1,700,000.00), plus the balance of any attorneys' fees, expenses, and class administration expenses that are not paid to Class Counsel as described in paragraph 4.c (which will be distributed evenly between the two Damages Sub-Classes), will be paid to the Damages Class Members, to be distributed in the following manner:

          i.    *Amount.*  Half the funds distributed to the Damages Class Members shall be set aside for distribution to the members of the Consult Request Sub-Class and half shall be set aside for distribution to the members of the No Consult Sub-Class.  Each member of each Sub-Class will receive an amount that is equal to the amount of money set aside for that Damages Sub-Class divided by the number of members in the Sub-Class.[5]

          ii.    *Method.*  For the Damages Class Members who are incarcerated on the Final

---

[5] At this time, Class Counsel estimates there are 311 members in the Consult Request Sub-Class and 1,637 members in the No Consult Sub-Class.  Using these numbers and assuming each Sub-Class is allocated $850,000.00, each Consult Request Sub-Class member should receive $2,733.12 and each No Consult Sub-Class member should receive $519.24.

Effective Date, SSI shall mail checks to the FDOC, or arrange another suitable method, so that the FDOC can deposit the appropriate damages amount directly into each Damages Class Member's inmate account. The FDOC shall ensure that the funds are deposited without undue delay, and without cost to the class member. For the Damages Class Members who are not incarcerated on the Final Effective Date, SSI shall mail the appropriate check to each Damages Class Member at the address indicated on the returned Claim Forms. For any Damages Class Member who has died, SSI shall make reasonable efforts to notify the next of kin of this settlement, and SSI is authorized to make a check payable to a Damages Class Member's estate if presented with proper documentation showing the estate was properly opened. All checks must be cashed or deposited within ninety (90) days of issuance. Any dispute as to the qualification of a Damages Class Member to receive any settlement funds, the amount of the settlement funds, or the completeness, accuracy, or propriety of a signature on any Claim Form shall be resolved in accordance with the dispute resolution provisions in paragraph 8 below. Except as provided in paragraph 11 below, each Damages Class Member shall be solely and exclusively responsible for any and all applicable federal and state taxes, withholdings of any kind, and/or obligations to creditors and courts (including bankruptcy court) associated with a payment of settlement proceeds. If SSI deems it necessary to withhold any portion of the settlement proceeds for tax or other purposes, then it shall do so. SSI shall issue any and all applicable tax, withholding, and/or other

forms associated with the payment of settlement proceeds to any Damages Class Member.  Other than the responsibility to make the settlement payment as set forth in paragraph 4, Defendants shall not be responsible for disbursement of the settlement funds.  Additionally, Defendants take no position on the fairness of the allocation of the settlement funds among Damages Class Members.

iii.  *Second Distribution and Cy Pres.*  If, after ninety (90) days from the date that SSI mails the checks, the amount of money from checks not cashed by the Damages Class Members is fifty thousand dollars ($50,000.00) or less, the funds shall be placed in a *Cy Pres* fund with the funds payable to Carrfour Supportive Housing located at 1398 Southwest 1st Street, Suite 1201, Miami, Florida 33135 ("Carrfour").  If, after ninety (90) days from the date that SSI mails the checks, the amount of money from checks not cashed by the Damages Class Members is greater than fifty thousand dollars ($50,000.00), then SSI shall distribute those funds to the Damages Class Members who cashed checks (or received a deposit to their inmate account) in the same manner and proportion as the first distribution, described above. Ninety (90) days after this second distribution, any funds remaining from checks not cashed shall be placed in a *Cy Pres* fund, with the funds payable to Carrfour.

c.  *Attorneys' Fees, Expenses, and Class Administration Expenses.*  Up to three hundred eighty-five thousand dollars ($385,000.00) of the settlement payment will be paid, collectively, to Class Counsel identified in paragraph 3.c. above as attorneys' fees,

expenses, and class administration expenses, which represents payment for all work performed up until the date Final Approval is entered.  Before the Final Approval Hearing, Class Counsel will provide to the Court a final accounting of all attorneys' fees, expenses, and class administration expenses incurred (and expected to be incurred through the date of Final Approval) and that amount shall be distributed to Class Counsel within thirty (30) days of the Final Effective Date.  If Class Counsel have incurred less than three hundred eighty-five thousand dollars ($385,000.00) in attorneys' fees, expenses and class administration expenses, the balance will be added to the amount that is distributed to the Damages Class Members and, if applicable, to the *Cy Pres* fund.  Expressly subject to Corizon's non-admission of liability in paragraph 2, the Court hereby finds that Plaintiffs and the Plaintiff Class are prevailing parties under 42 U.S.C. § 1988 for purposes of attorneys' fees and expenses.  Pursuant to 42 U.S.C. § 1997e(d), and, expressly subject to Corizon's non-admission of liability in paragraph 2, the Court finds that the attorneys' fees and expenses payable under this paragraph 4.c. were directly and reasonably incurred in proving a violation of Plaintiffs' constitutional rights, the amount of fees and expenses is proportionately related to the court ordered relief, and the fees and expenses were directly and reasonably incurred in enforcing the relief ordered.  Neither Plaintiffs nor Class Counsel shall be entitled to any additional attorneys' fees, expenses, or class administration expenses in this action or against Defendants; provided, however, that Plaintiffs and Class Counsel may be entitled to attorneys' fees and expenses for any future actions taken to enforce this Consent Order, including but not limited to successfully defending against a motion to modify or terminate this Consent Order brought by FDOC, or bringing a successful motion requesting that this Consent Order stay in place after Final Approval is

entered.

   d. *No Additional Contribution by Defendants*. Defendants' monetary obligation under this Consent Order shall be limited to their respective settlement payments and attorneys' fees identified in this paragraph 4 above. Defendants shall not be requested or required to contribute additional monies under any circumstance whatsoever. If there is no Final Approval of this Consent Order or this Consent Order is cancelled, rescinded, terminated, voided, invalidated, or nullified for any reason, Defendants shall cease to have any obligation to pay any portion of their respective settlement payments and any prior disbursements from the settlement fund shall be immediately paid back to Defendants by the person who or entity which received such disbursement.

5. **New Hernia Policy.**

   a. *Health Service Bulletin*. Within thirty (30) days from date the Court enters Final Approval, the FDOC shall formally adopt a new Health Service Bulletin (HSB) dealing with hernias. The HSB shall say the following: "A patient presenting with a hernia shall be referred to a surgeon for a surgical consultation if, in the medical judgment of the treating physician, the patient is experiencing pain affecting daily life activities (including but not limited to walking, running, working, playing sports, sleeping, lifting, urinating, and defecating), the hernia is not easily reducible, the hernia is incarcerated, the hernia is in the scrotum, or the patient is experiencing any other symptom that, in the medical judgment of the treating physician, warrants surgical referral. The recommendation of the surgeon shall not be unreasonably refused. The reasons for refusing the recommendation of the surgeon shall be documented in the patient's medical file. If the patient is not referred to a surgeon, conservative measures may be the initial management, including passes for

low bunk and restricted activities.  The patient must be counseled to access Medical should he or she develop any pain in the area or generalized abdominal pain, constipation/vomiting, if the hernia grows bigger, or if the hernia falls into the patient's scrotum.  The benefit of surgical treatment versus the inherent risks and complications of anesthesia and surgery should be explained to the patient.  The patient will be provided with appropriate follow-up care."  The FDOC shall provide a copy of this HSB to Class Counsel within ten (10) days of its formal adoption.  Corizon does not acknowledge, agree, or represent that the HSB is fair, adequate, and/or necessary for FDOC prisoners.

b.      *Notice to Medical Staff*.  Within thirty (30) days from the final adoption of the HSB, the FDOC shall notify every Chief Health Officer (CHO) of every FDOC institution of the adoption of the HSB, and direct each CHO to provide notice of same to each medical staff member at that CHO's institution.  Upon completion of this notification process, FDOC shall provide written notice of the completion of this notification process to Plaintiffs' counsel.

c.      *Compliance with HSB*.  Starting sixty (60) days after the HSB is formally adopted and continuing thereafter, the FDOC shall comply with this HSB, and ensure that any future medical contractor or private prison contractor complies with this HSB.  In addition to future compliance, the FDOC shall ensure compliance with the HSB for all FDOC prisoners who have already reported hernias, been referred for a surgical consultation, or been recommended for surgery.  The FDOC shall ensure that consultations and surgeries are scheduled, and prisoners transported to and from appointments, without undue delay.

d.      *No Impact on Informed Consent*.  Nothing in this paragraph or Consent

Order requires or allows the FDOC, or any medical contractor, to provide medical care or treatment to any prisoner who does not consent to such care or treatment.  The FDOC's usual informed consent procedures shall be followed.

6.     **Reports to Class Counsel.**  Starting one hundred eighty (180) days after Final Approval is entered, and every one hundred eighty (180) days thereafter until the this Consent Order terminates or expires (as defined below), FDOC shall provide to Class Counsel a list of FDOC prisoners who, during the one hundred eighty (180) days preceding the report, have reported hernias to medical staff, and include the dates on which (a) the hernia was reported, (b) a surgical consult was requested, (c) surgery was requested, and (d) surgery was performed.  If surgery was not performed, the report shall provide the date on which the surgery was denied, and the reason for the denial.

7.     **Release.**  Subject to Final Approval and in consideration of the settlement payment in paragraph 4 above and the injunctive relief in paragraphs 5 and 6 above, except as expressly stated in this paragraph 7 below, Plaintiffs and the Damages Class Members hereby and for their spouses, heirs, executors, administrators, agents, representatives, successors, and assigns, unconditionally and forever release, acquit, and discharge the FDOC, Corizon, and their past, present, and future agents, servants, employees, officers, directors, parents, subsidiaries, affiliates, attorneys, successors and assigns of and from any and all known and unknown claims, actions, causes of action, suits, charges, complaints, demands, liabilities, rights, damages, injuries, costs, losses, expenses and compensation whatsoever, that Plaintiffs and the Damages Class Members ever had or which may hereafter accrue, concerning, arising out of or relating to the claims asserted and relief sought or claims that could have been asserted and relief that could have been sought, in this action, to wit, claims related to medical care or treatment of a hernia arising under federal

and state law and any actual, compensatory, statutory, incidental, consequential, special and/or punitive damages, emotional relief, and/or equitable relief applicable to such claims; provided, however, that any Injunctive Class Member who is not also a Damages Class Member does not release any claim for damages that has accrued or will accrue as to any other medical provider such as Wexford Health Sources, Inc. and Centurion of Florida, LLC.  Furthermore, subject to Final Approval and in consideration of the settlement payment in paragraph 4 above and the injunctive relief in paragraphs 5 and 6 above, except as expressly stated in this Consent Order, Plaintiffs and the Injunctive Class Members (who are not also Damages Class Members) hereby and for their spouses, heirs, executors, administrators, agents, representatives, successors, and assigns, unconditionally and forever release, acquit, and discharge the FDOC, Corizon, and their past, present, and future agents, servants, employees, officers, directors, parents, subsidiaries, affiliates, attorneys, successors and assigns of and from any and all known and unknown claims for injunctive relief only, that Plaintiffs and the Injunctive Class Members ever had or which may hereafter accrue, concerning, arising out of or relating to the claims asserted and relief sought in this action.  The Injunctive Class Members (who are not Damages Class Members) do not release the FDOC or Corizon from any claims for damages, if any.

8. **Enforcement.**  If any Party believes that a dispute exists relating to the provisions of this Consent Order before the dismissal of Corizon, it shall notify the other Parties in writing, describing the dispute.  The Parties shall engage in good-faith negotiations and attempt to resolve the dispute.  If the Parties cannot resolve the dispute within fourteen (14) days of the written notification, then they shall mediate their dispute with Harry R. Schafer, Esq., Kenny Nachwalter, P.A., Four Seasons Tower, 1441 Brickell Avenue, Suite 1100, Miami, Florida 33131, at a mutually agreeable date and time.  Notification of a dispute and/or the mediation of a dispute shall not toll

any deadlines under this Consent Order or any other deadlines.  If, through mediation, the Parties are unable to resolve the dispute, then a Party may file an appropriate motion with this Court.  After dismissal of Corizon, if Plaintiffs, any class member, or the FDOC believe that a dispute exists relating to the provisions of this Consent Order or desire enforcement of any provision of this Consent Order, he/she/it shall notify the other Party in writing, describing the dispute.  FDOC and Class Counsel shall engage in good-faith negotiations and attempt to resolve the dispute.  If FDOC and Class Counsel cannot resolve the dispute within fourteen (14) days of the written notification, then a Party (including Class Counsel on behalf of a Plaintiff or any class member) may file an appropriate motion with this Court.

9.     **Modification**.  After the Final Effective Date, Plaintiffs and FDOC may jointly request this Court to modify, amend, or alter any of the rights or obligations in this Consent Order that do not pertain to Corizon by filing a Joint Motion to Modify, signed by both Parties.  If Plaintiffs or FDOC wants to modify this Consent Order without the other Party's consent, the Party desiring modification shall so notify the other Party, and Plaintiffs and FDOC shall negotiate in good faith in an attempt to resolve the matter.  If thirty (30) days elapse from the notification and Plaintiffs and FDOC have not reached an agreement, the Party desiring modification may file a Motion to Modify with this Court.

10.     **Prison Litigation Reform Act.**  Expressly subject to Corizon's non-admission of liability in paragraph 2, pursuant to 18 U.S.C. § 3626, the Court finds that the injunctive relief agreed to by Plaintiffs and the FDOC and ordered by this Consent Order is narrowly drawn, extends no further than necessary to correct the violation of Plaintiffs' and the class members' constitutional rights, and is the least intrusive means necessary to correct the violation.  The Court has given substantial weight to any adverse impact on public safety or the operation of a criminal justice

system, and finds that the injunctive relief ordered herein will have no adverse impact on public safety or the operation of a criminal justice system.

11.     **Waiver of Costs of Incarceration.**  The FDOC agrees to waive its right to enforce any cost of incarceration lien, counterclaim, or any claim whatsoever that it may have under Florida Statute § 960.29, *et seq.*, against the settlement proceeds payable in this matter, for all class members; however, this limited waiver of enforcement against settlement proceeds shall not reduce the amount of any lien currently in existence or that may be obtained at a future date, other than a cost of incarceration lien.

12.     **Waiver of Appeal.**   Any class member (either Injunctive or Damages Class Member) who does not timely submit an objection to the Consent Order or timely submit a valid Opt-Out Statement hereby unconditionally and forever waives any and all rights to appeal from the Final Approval and/or any final judgment, including, without limitation, all rights to any post-judgment proceeding and appellate proceeding such as a motion to vacate judgment, motion for new trial, and extraordinary writs; provided, however, that this waiver does not include a waiver of the right to oppose any appeals, appellate proceedings, or post-judgment proceedings, if any.

13.     **Interim Stay of Proceedings.**  Pending completion of the settlement process, this action and all deadlines contained in the applicable scheduling orders shall be stayed, except such proceedings necessary to implement and obtain Final Approval of this Consent Order.

14.     **Severability**.  If any paragraph or portion of this Consent Order is held to be invalid by a court of law after the Final Effective Date, the remaining portions of this Consent Order shall continue to be in full force and effect.

15.     **Binding of Successors**.  This Consent Order is binding upon the Parties and their successors, assigns, employees, and agents.  The FDOC shall take reasonable steps to ensure that

any future FDOC Secretary and medical contractor is notified of and complies with this Consent Order.

16.     **No Prior Assignment.**  The Parties hereby acknowledge, represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, hypothecated, encumbered, or purported to assign, transfer, hypothecate, or encumber to any person or entity anything released in paragraph 7 above.

17.     **Entire Agreement.**  This Consent Order (including all exhibits) contains the entire agreement of the Parties with respect to its subject matter and supersedes any and all other prior agreements and all negotiations leading up to the execution of this Consent Order, whether oral or written, regarding the subject covered in this Consent Order.   The Parties acknowledge that no representations, inducements, promises, or statements related to this settlement or the subjects covered in this Consent Order, oral or written, have been made by any of the Parties or by anyone acting on behalf of the Parties which are not embodied or incorporated by reference in this Consent Order, and further agree that no other agreement, covenant, representation, inducement, promise, or statement relating to this settlement or the subjects covered in this Consent Order not set forth in writing in this Consent Order have been made by any Party.

18.     **Third-Party Beneficiaries.**  Nothing in this Consent Order, express or implied, is intended to or shall confer upon any person, business entity, or governmental entity not a Party to this Consent Order any right, benefit, or remedy of any nature whatsoever under or by reason of this Consent Order.  Individual class members shall not be deemed to be third-party beneficiaries of this Consent Order, and they shall have no right to bring any civil action or legal proceeding for any alleged violation of this Consent Order, unless it is through Class Counsel.  Class Counsel alone, on behalf of any class member, shall have the authority to seek enforcement of the terms of

this Consent Order through the enforcement provision contained in paragraph 8 above.  To the extent a class member has a complaint regarding FDOC's implementation or performance of the injunctive-related provisions in this Consent Order, he or she shall bring that complaint to the attention of Class Counsel. Nothing in this Consent Order precludes Class Counsel from communicating with class members or otherwise advising them of their rights and responsibilities under this Consent Order.

19.    **Captions and Headings.**  The captions and headings of this Consent Order are for convenience of reference only and in no way define, limit, or describe the scope or intent of this Consent Order.

20.    **Retention of Jurisdiction and Expiration.**  The Court retains jurisdiction over this matter to enforce the terms of this Consent Order.  Not earlier than two (2) years following the Final Effective Date, the FDOC may move to terminate this Consent Order.  At least sixty (60) days prior to filing a motion to terminate, the FDOC shall provide written notice to Class Counsel of its intent to file such a motion, and the parties shall engage in good faith negotiations to attempt to resolve any disputes.  If agreement cannot be reached within sixty (60) days from the date of the written notification, the FDOC may file a motion to terminate this Consent Order.

21.    **Dismissal of Corizon.**  Within three (3) days after Corizon makes its portion of the settlement payment identified in paragraph 4 above, Plaintiffs shall file the attached Joint Stipulation of Voluntary Dismissal of Defendant Corizon with Prejudice (Ex. 7), dismissing Corizon with prejudice and subject to Corizon's ability to enforce the terms of this Consent Order.

SO ORDERED, this 22d day of September, 2016.

s/Robert L. Hinkle
United States District Judge

By their signatures, the authorized representatives of the Parties hereby agree that the statements and representations in this Consent Order are true and correct and agree to be bound by the terms of the Consent Order.  The Parties' authorized signatories hereby represent and warrant that they have the full power and right to execute this Consent Order with full authority to bind the party on whose behalf they are signing.  By virtue of their signatures below, counsel for the FDOC and Corizon are not acting as authorized representatives of their respective clients, but their signatures shall only constitute their authorization for submission of this Consent Order for consideration of the Court and the necessary certification pursuant to Rule 11 of the Federal Rules of Civil Procedure.

[BALNCE OF PAGE INTENTIONALLY LEFT BLANK]

**Signature Page for Plaintiff and Class Representative Tracy Copeland:**

 *s/Tracy Copeland*
Tracy Copeland
Date:   September 19, 2016

**Signature Page for Plaintiff and Class Representative Archie Green:**


*s/Archie Green*
Archie Green
Date:   September 19, 2016

**Signature Page for Plaintiff and Class Representative Amado Parra:**

*s/Amado Parra*
Amado Parra
Date:   September 19, 2016

**Signature Page for Defendant Corizon, LLC:**

*J. Scott King*

Print Name: J. Scott King
Title: Executive Vice President & Chief Legal Officer
Date: September 19, 2016

**Signature Page for Defendant Florida Department of Corrections:**

Print Name: Kenneth S. Steely

Title: General Counsel

Date: 9/19/16

<div style="display:flex">
<div>

*s/Randall C. Berg, Jr., Esq.*

Randall C. Berg, Jr., Esq.
Randall C. Berg, Jr., Esq.
Fla. Bar No. 0318371
*RBerg@FloridaJusticeInstitute.org*
Dante P. Trevisani, Esq.
Fla. Bar No. 72912
*DTrevisani@FloridaJusticeInstitute.org*
FLORIDA JUSTICE INSTITUTE, INC.
3750 Miami Tower
100 S.E. Second Street
Miami, Florida  33131
305.358.2081
305.358.0910 – Fax

Kenneth R. Hartman, Esq.
*krh@kttlaw.com*
Douglas A. Wolfe, Esq.
Florida Bar No. 28671
*daw@kttlaw.com*
Thomas Tucker Ronzetti, Esq.
Florida Bar No. 965723
*tr@kttlaw.com*
Monica McNulty, Esq.
Florida Bar No. 105382
*mmcnulty@kttlaw.com*
KOZYAK TROPIN &
THROCKMORTON, LLP
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
305.372.1800
305.372.3508 – Fax

**Attorneys for Plaintiffs**

</div>
<div>

*s/Kirkland E. Reid, Esq.*

Kirkland E. Reid, Esq.
Kirkland E. Reid (REIDK9451)
*kreid@joneswalker.com*
JONES WALKER LLP
11 North Water Street, Ste. 1200
Mobile, Alabama 36602
251.439.7513
251.439.7358 – Fax

Marc W. Dunbar, Esq.
Fla Bar No. 8397
*mdunbard@joneswalker.com*
Daniel Russell, Esq.
Fla. Bar No. 63445
*drussell@joneswalker.com*
JONES WALKER LLP
215 South Monroe Street, Suite 130
Tallahassee, FL 32301
850.425.7805
850.425.7815 – Fax

**Attorneys for Defendant Julie Jones, in her official capacity as Secretary of the Florida Department of Corrections**

*s/William R. Lunsford, Esq.*

William R. Lunsford, Esq.
William R. Lunsford, Esq. (ASB-4265-L72L)
*blunsford@maynardcooper.com*
Matthew B. Reeves, Esq. (ASB-5165-T78R)
*mreeves@maynardcooper.com*
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
256.551.0171
256.512.0119 – Fax

George N. Meros, Jr.
Fla. Bar No. 28671
*george.meros@gray-robinson.com*
James Timothy Moore, Jr.
Fla. Bar. No. 70023
*tim.moore@gray-robinson.com*
GRAYROBINSON, P.A.
301 South Monroe Street, Suite 600

</div>
</div>

Tallahassee, Florida 32302
850.577.9090
850.577.3311 - Fax

***Attorneys for Defendant Corizon, LLC***